**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

**CASSIE BREAZEALE and**
**RHONDA GARDNER, on their own**
**behalf and on behalf of those**
**similarly situated,**                    **CASE NO.:  5:21-cv-181-D**

        **Plaintiffs,**

**vs.**

**AMPLER PIZZA II, INC.,**

        **Defendant.                         /**

_____

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF**
**COLLECTIVE ACTION SETTLEMENT AGREEMENT AND CONDITIONAL**
**CERTIFICATION OF AN FLSA COLLECTIVE ACTION**
**FOR SETTLEMENT PURPOSES**

Plaintiffs, Cassie Breazeale ("Breazeale") and Rhonda Gardner ("Gardner") (collectively referred to as "Plaintiffs"), individually and on behalf of similarly situated persons, and Defendant, Ampler Pizza II, Inc. ("Defendant") jointly move for approval of the parties' Collective Action Settlement Agreement and attachments ("Settlement Agreement" attached as Exhibit "1") and for conditional certification of an FLSA collective action for settlement purposes.  In support of their Joint Motion, the parties file the following memorandum of law.

I.    Background

Plaintiffs filed this lawsuit on behalf of themselves and those similarly situated on April 21, 2021 [D.E. 1]. Plaintiffs allege that Defendant violated the Fair Labor

Standards Act, 29 U.S.C.§§201, *et seq*. ("FLSA") by failing to pay them and other General Managers proper wages due under the FLSA as of January 1, 2020. Specifically, Defendant classified Plaintiffs and other General Managers ("Putative Class Members") as exempt from overtime pay under the FLSA, pursuant to the FLSA's executive exemption. *See* 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.100; *see also* D.E. 19, Defendant's Answer and Defenses to Plaintiffs' Complaint at ¶ 25. Effective January 1, 2020, the Department of Labor revised the minimum salary threshold required for the while collar exemptions containing a "salary basis" test to $684.00 per workweek. Plaintiffs claim that upon the effective date of this change in the law, Defendant failed to pay them and other General Managers similarly situated to them the minimum weekly salary of $684.00 as of January 1, 2020, contrary to the FLSA. As a result, Plaintiffs claim that because they were misclassified as exempt, they are entitled to the difference between the weekly salary paid to them and the minimum weekly salary of $684.00 per week, or alternatively, to overtime pay.. Defendant denies the material allegations in Plaintiffs' Complaint.

Plaintiffs were prepared to file their Motion for Conditional Certification of a Collective Action and to Facilitate Notice to Potential Class Members. However, upon conferring with Defendant, the parties filed a Joint Motion to Postpone Rule 26(f) Conference and to Stay Action Pending Class-wide Resolution so that the parties could attempt a class-wide resolution without the need for further litigation. *See* D.E. 22. On August 6, 2021, this Court entered an order postponing the Rule 26(f) conference,

2

staying the action, and tolling the Putative Class Members' claims until further notice. *See* D.E. 23. The parties subsequently conducted a thorough investigation into the facts and law and exchanged documents and pay data related to the Putative Class Members. The parties prepared independent damages calculations for the Putative Class Members under multiple scenarios. The parties then engaged in months of settlement negotiations and discussions via electronic mail and telephone. All of the parties believe that the terms of the proposed settlement, which are summarized below, are fair, reasonable, and should be approved. The settlement grants relief for Plaintiffs and the entire putative class, provides an appropriately limited release in favor of Defendant with respect to the Putative Class Members, and, per Plaintiffs' counsel's calculation of alleged damages, the total settlement amount provides Plaintiffs and the Putative Class Members 100% of their back pay damages and 95% of liquidated damages under the FLSA, exclusive of attorneys' fees and costs. Plaintiffs' Counsel will be responsible for mailing the Collective Action Settlement Notice agreed to by the parties, as well as the checks to each Putative Class Member who claims their portion of the settlement.

In this memorandum, the parties summarize the material terms of their agreement; describe the procedure for approval of a collective action settlement and the legal principles governing the approval of a settlement in a collective action; and apply these principles to show why this proposed settlement is fair and reasonable, and should be approved by this Court.

3

II.     Summary of the Settlement Agreement

Under the Settlement Agreement, the parties seek to certify a collective action for settlement purposes under the FLSA and to send notice to all General Managers who worked for Defendant as of January 1, 2020, but who were not compensated a salary of at least $684.00 per week and who did not earn time-and-one-half of their regular rate of pay for all hours worked in excess of forty (40) hours in one or more workweeks; to pay Settlement Payments to all members of the class who opt to join this lawsuit; to provide Post-Notice Opt-In Plaintiff releases in favor of Defendant limited to claims raised or that follow directly from the allegations raised in this case; to allow Plaintiffs and the two (2) Pre-notice Opt-in Plaintiffs who aided Plaintiffs' counsel in the investigation and prosecution of the claims raised in this lawsuit to seek a modest service award in exchange for a full and general release of all claims against Defendant; and to provide Plaintiffs' counsel the attorneys' fees and costs, including the expenses associated with settlement administration, which were agreed to separate and apart from the amounts to be paid to Plaintiffs, the Pre-Notice Opt-in Plaintiffs and the Putative Class Members.

A.  Conditional certification for settlement purposes

The parties ask the Court to conditionally certify for settlement purposes a collective action pursuant to Section 216(b) of the FLSA.  The group who would be provided notice and an opportunity to join this lawsuit, defined in the Settlement Agreement as the "Settlement Class" or "Class" is composed of: all individuals who

4

worked as General Managers for Defendant, but who did not earn at least $684.00 per week or overtime pay as of January 1, 2020.

The conditional certification of a collective action under the FLSA for settlement purposes would allow the parties to send a Court-approved notice to all individuals who fall within the definition of the Settlement Class. (The parties' agreed upon Notice and Claim Form is attached to the parties' Settlement Agreement as exhibits "C" and "E," respectively). Those Settlement Class Members who complete a Claim Form and W9 shall subsequently receive a check for their portion of the settlement. Those individuals who complete the Claim Form and W9 would be part of the settlement as "Opt-In Plaintiffs" pursuant to the Settlement Agreement. As the parties explain in more detail below, there are no due process concerns because, under the opt-in FLSA settlement process, only those who affirmatively agree to join the lawsuit would be bound by the settlement and release. If a class member chooses not to accept the payment, then that class member loses no rights and is free to pursue his or her own individual claim, if desired, as he or she sees fit.

B. <u>Amount of the settlement</u>

### 1. Amount to the Settlement Class Members

Defendant has agreed to create a fund as defined in the Settlement Agreement as the "Total Settlement Amount." Out of the Total Settlement Amount, Defendant agrees to pay all payments to the Settlement Class Members (including all payments for back wages and liquidated damages); a service award to Plaintiffs and the two (2) Pre-Notice

5

Opt-in Plaintiffs in exchange for a mutual general release; and attorneys' fees and costs to include the costs and expenses of administration of Notice to the Putative Settlement Class Members. The amounts allocated to each Settlement Class Member are defined in the "Shares Spreadsheet" which is attached to the parties' Settlement Agreement as Exhibit A.

To calculate each Settlement Class Member's share of the settlement, the Parties used each Settlement Class Member's actual pay records to calculate the damages due to each Settlement Class Member under various scenarios. The Parties ultimately agreed to an amount that provides each Settlement Class Member with 100% of their FLSA back pay had they received the appropriate weekly salary due under the statute ($684.00), plus an amount equal to 95% of their FLSA back pay damages as liquidated damages ("Settlement Payment"). Each Settlement Class Member who timely completes a Claim Form and W9 will receive a settlement check in the amount of that Settlement Class Member's Settlement Payment. Any portions of the Settlement Payments that are either not claimed or not cashed in a timely manner by the Settlement Class Member will be retained by or returned to Defendant.

### 2. Attorneys' fees, costs, service award and administration costs

In addition to the money that is allocated to pay the Settlement Class Members, Defendant agrees to pay Plaintiffs an award of attorneys' fees and reimbursement of costs and expenses (including the costs and expenses related to the administration of notice to the putative class members) expenses totaling $42,000.00, which is less than up

6

to a maximum of 33.33% of the Total Settlement Amount or of the total amount of allocated as settlement shares and service awards. The amount agreed to for attorneys' fees and costs was negotiated and agreed to separate and apart from the amounts to be paid to the Settlement Class Members, and is lower than the 40% fee amount in Plaintiffs' engagement agreement. *See* Declaration of Kim De Arcangelis ("De Arcangelis Decl."), attached as **Exhibit 2,** ¶8.

Defendant also agrees to pay a total of Eight Thousand Dollars ($8,000.00) to Plaintiffs and the two (2) Pre-Notice Opt-in Plaintiffs as service awards and consideration for general releases. This service award is in recognition of the time and effort spent aiding in the investigation and development of the claims asserted by Plaintiffs. Plaintiffs and the Pre-Notice Opt-in Plaintiffs will also execute a mutual general release releasing any and all claims in favor of Defendant in exchange for this amount. The service awards will be paid from the Total Settlement Amount, and will be in addition to Plaintiffs' and the Pre-Notice Opt-in Plaintiffs' individual settlement shares.

### 3. Releases Related to Settlement Class Members Who Join

If the Settlement Agreement is approved, all Settlement Class Members (that is, all individuals who voluntarily choose to accept this settlement and complete a Claim Form) will release only those claims that relate to the alleged under-payment of the salary threshold and/or overtime pay under the FLSA and under applicable state wage and hour laws. Because this is a settlement agreement under the FLSA, and the parties

7

are not asking for a settlement under Rule 23, there are no absent class members. Consequently, only those individuals who actually consent to join the lawsuit by completing the Claim Form and claiming their Settlement Share Amount will release any claims.

III.     The Court Should Approve the Parties' Agreement

        A.     The Settlement Meets the Standard for Approval of FLSA Settlements

The standard for approval of an FLSA settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Latham v. Branch Banking and Trust Co.*, 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014). In evaluating whether a settlement is reasonable, adequate, and fair, a court should consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of the plaintiffs' success on the merits and the amount of the settlement in relation to potential recovery. *Lomascolo v. Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009).

8

Because the settlement of an FLSA claim has no binding effect on absent class members—it only binds the potential class members who affirmatively opt-in—approval of the Settlement Agreement is governed by FLSA procedures, not the procedure prescribed for class actions. *See Calderone v. Scott*, 838 F.3d 1101, 1102 (11th Cir. 2016) ("The FLSA's § 216(b) requires plaintiffs to 'opt in' to be considered class members. In contrast, a Rule 23(b)(3) class action requires plaintiffs to 'opt out' if they do not wish to be bound by the court's judgment.") Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### 1. The Parties Have a *Bona Fide* Dispute

Court approval of FLSA settlements requires that the settlement resolve a *bona fide* dispute over FLSA provisions. *Lomascolo*, 2009 WL 3094955, at *16 (citing *Lynn's Food Stores Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Here, Plaintiffs allege that Defendant failed to pay them and other General Managers similarly situated to them the minimum weekly salary of $684.00 as of January 1, 2020, contrary to the FLSA. As a result, Plaintiffs claim that they are entitled to the difference between the weekly salary paid to them and the minimum weekly salary of $684.00 per week, or alternatively, to overtime pay under the FLSA. Plaintiffs also allege that they are entitled to liquidated damages under the FLSA. Defendants deny these allegations. Defendant maintains that it properly paid Plaintiffs and its other General Managers

9

under the FLSA. Accordingly, the Court should decide that a bona fide dispute exists between the parties.

### 2. The Settlement is Reasonable, Adequate, and Fair

The Court should approve the Parties Settlement because it is fair and reasonable and adequately compensates Plaintiffs and the Settlement Class for their FLSA claims. The settlement was negotiated at arm's-length by experienced counsel; the amounts Defendant has agreed to pay the Settlement Class Members is fair and adequate; there is a risk to the class of an adverse judgment on the merits or whether the case should proceed as a collective action; the class will receive adequate notice sufficient for each potential opt-in to assess his or her rights; the members of the class are sufficiently similar for *conditional* certification for settlement purposes; and the amount of fees, costs and service awards requested are in line with sums previously awarded in similar cases.

This settlement is particularly fair and reasonable because, unlike a Rule 23 *class* action settlement, only those individuals who voluntarily choose to become part of the lawsuit, and thus to participate in the settlement, are bound by it. As stated in the Notice, any class member who has questions about the settlement may contact Plaintiffs' counsel. More importantly and as more fully described below, any class member who disagrees with the allocation is not obligated to participate in the settlement, in which case he or she would not give up any rights, including not releasing any claims.

10

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also, e.g., Duprey v. Scotts Co., LLC*, 30 F. Supp. 3d 404, 411 (D. Md. 2014) ("Here, the amount provided in [the settlement] is fair and reasonable in light of the particular circumstances of the case, including Duprey's recognition of the strong defenses asserted by Scotts, as explained above.").

Here, without question, the settlement is fair, reasonable and adequate. The Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. *See* Ex. 2, De Arcangelis Decl. at ¶¶ 3-5. The Parties investigated the merits of the claims and Defendant's defenses. The Parties exchanged substantial informal discovery and information in order to evaluate the potential claims. Indeed, the Parties exchanged nearly all of the relevant records that would have been exchanged in formal discovery. After months of negotiations, the Parties reached a settlement under which each Settlement Class Member will receive 100% of their FLSA back pay had they received the appropriate weekly salary due under the statute

11

($684.00), plus an amount equal to 95% of their FLSA back pay damages as liquidated damages, exclusive of fees and costs (which was negotiated *separately* from the amounts negotiated to the class). As a result, no Settlement Class Member will see their award amount reduced because of attorneys' fees and costs. This is a significant recovery for each Settlement Class Member, especially since Defendant denies that it failed to pay them properly under the FLSA.

Finally, the strong likelihood that any recovery would take years also weighs in favor of reasonableness. Indeed, public policy favors settlement, where substantial resources can be conserved by avoiding time, cost, and protracted litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("…we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation"). Here, because Plaintiffs have calculated that they and the Settlement Class Members will receive 100% of their FLSA back pay had they received the appropriate weekly salary due under the statute, plus an amount equal to 95% of their FLSA back pay damages as liquidated damages, the Parties' settlement is reasonable and should be approved.

D.     The Parties' Settlement and Notice Process is Procedurally Fair

The parties ask the Court to conditionally certify a collective action for settlement purposes, and to send the Notice and Claim Form to the Settlement Class Members. Given the fact that the individuals who would receive notice all worked for the Defendant in the same position, had the same job title, and worked under the same or

12

similar job description, there is sufficient evidence to meet the "lenient" evidentiary showing required to conditionally certify this action for settlement purposes.

Because there are no absent class members in a FLSA collective action, a settlement under the FLSA does not require the exacting due process considerations necessary under a class action settlement. Unlike Rule 23 class actions, where class members are bound unless they opt-out, in an FLSA collective action, a party's failure to opt-in to such action does not prevent them from bringing their own suits at a later date. *See Reynolds v. Fid. Invs. Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 91874, at *4 (M.D.N.C. Jan. 8, 2020); *see also Calderone*, 838 F.3d at 1102. FLSA collective actions thus do not implicate the same due process concerns as Rule 23 actions. *See id.* (*citing, Hall v. Higher One Machs., Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *4 (E.D.N.C. Sept. 26, 2016). There is, for example, no need for an objection period or a fairness hearing; instead, approval may be sought on a single motion to enter a stipulated order. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353; *see also Privette et al, v. Waste Pro of North Carolina, Inc.* No. 2:19-cv-3221, at D.E. 71 (D.S.C. Oct. 26,2021)(order approving FLSA settlement and dismissing the action with prejudice prior to dissemination of notice to class members).

In this case, members of the Settlement Class will have to timely complete the Claim Form to receive their settlement payment. Along with the Claim Form, they will receive a Notice that will notify them of the existence and nature of the case, and will advise them how to obtain and read the actual Settlement Agreement. Only if they then

13

independently decide to opt-in will they be bound by the settlement, including receiving the settlement payment and being bound by the limited release. Any individual who chooses not to opt-in is not part of the case, and is not bound in any way by the settlement or any release. That significant difference between a Rule 23 class action settlement and an FLSA collective action settlement weighs in favor of approval, since the individual class members will have the opportunity to make an informed decision about whether to join the settlement, and will not be bound by it unless they affirmatively choose to do so.

     E.     <u>Class Counsel is Entitled to Attorneys' Fees and Costs</u>

Defendant agrees to pay to Class Counsel $42,000 in fees and costs and expenses including expenses for settlement administration. Plaintiffs therefore request that the Court award this amount, which is actually *less than* up to a maximum of 33.33% of the Total Settlement Amount or of the total amount to be paid to Plaintiffs' and the Settlement Class Members. Specifically, the requested fees and costs total approximately 32.8% of the allocated settlement shares and service awards ($128,000.00), which is also *lower than* the 40% contingency fee agreed to in Plaintiffs' engagement agreement. *See* Ex. 2, De Arcangelis Decl. at ¶8. *See Humble v. Harrah's NC Casino Co.*, LLC, No. 1:17-CV-00262-MR-WCM, 2020 WL 8922792, at *2 (W.D.N.C. Aug. 24, 2020) (awarding Class Counsel 36.63% of settlement fund, which was lower than the 40% fee agreement in Plaintiffs' engagement agreement). Additionally, the amount agreed to for attorneys' fees and costs was negotiated and agreed to separate and apart

14

from the amounts to be paid to the Settlement Class Members and includes the time and expense that will be associated with the administration of the notice process. As such the Settlement Class Members' settlement shares will not be reduced because of attorneys' fees.

Class Counsel is explicitly entitled to recover attorney's fees and costs under the FLSA. Moreover, even in the absence of a statutory entitlement to attorney's fees and costs, Class Counsel is entitled to a fee/cost award under the equitable common fund doctrine, which entitles a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client to reasonable attorney's fees from the fund as a whole. *Boeing Co. v. Gemert*, 444 U.S. 472, 478 (1980).

Courts in the Fourth Circuit have discretion to calculate awards of attorneys' fees by using either a lodestar/multiplier approach or a percentage of the fund calculation. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). "[T]he percentage of fund method provides that the court award attorneys' fees as a percentage of the common fund," while "[t]he lodestar method requires the court to determine the hours reasonably expended by counsel that created, protected, or preserved the fund[,] then to multiply that figure by a reasonable hourly rate." *Phillips v. Triad Guaranty Inc.*, No. 1:09cv71, 2016 WL 2636289, at *2 (alteration in original) (quotation marks omitted). "The vast majority of courts use the percentage of recovery method, which is advantageous because it ties the attorneys' award to the overall result achieved rather than the number of hours worked." *In re Allura Fiver Cement Siding Litigation*, 2021 WL 2043531,

15

*4 (D.S.C. May 21, 2021); *Loudermilk Servs., Inc. v. Marathon Petroleum Co. LLC*, 623 F. Supp. 2d 713, 717-18 (S.D. W. Va. 2009) (internal quotations omitted). When reviewing awards of attorneys' fees it is only necessary that the award "be reasonable under the circumstances." *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3 (E.D.N.C. Aug. 23, 2011); *Jacksonville Prof'l Fire Fighters Ass'n Local 2961, IAFF v. City of Jacksonville*, 685 F. Supp. 513, 526 (E.D.N.C. 1987).

Courts also have recognized that common fund recoveries based on contingency fee representation are especially beneficial to employee plaintiffs who may not possess the financial resources to hire counsel on an hourly basis to pursue their claims:

> Common fund recoveries are contingent on a successful litigation outcome. Such contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk. Many individual litigants, including the class members here, cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation.

*Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, *8 (S.D.N.Y. Oct. 5, 2012) (internal citation and quotation omitted); *see also, Brundle on behalf of Constellis Employee Stock Ownership Plan v. Wilmington Trust, N.A.*, 919 F.3d 763, 2019 Employee Benefits Cas. (BNA) 97998 (4th Cir. 2019) (recognizing that employee that benefits from a lawsuit without contributing to its costs, would be unjustly enriched at the successful litigant's or lawyer's expense.).

16

The Court typically evaluates the reasonableness of attorneys' fees by comparing the requested amount to the lodestar amount, which is defined as a "reasonable hourly rate multiplied by hours reasonably expended." *See Grissom*, 549 F.3d 313, 320-21 (4th Cir. 2008); *Mercer v. Duke Univ.*, 401 F.3d 199, 211 (4th Cir. 2005). However, in a common fund case such as this one, a fee award determined by percentage is preferred over the lodestar method. *See Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) ("Within this Circuit, the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees.") (citing *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998) ); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995) ("the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases").

Numerous recent decisions from courts within this Circuit in similar wage and hour class/collective actions have awarded attorneys' fees based on a percentage and consistent with the amount requested by class counsel here. *See, e.g., Privette et al, v. Waste Pro of North Carolina, Inc.* No. 2:19-cv-3221, at D.E. 71-72 (D.S.C. Oct. 26,2021) (awarding 40% of the gross settlement amount to class counsel prior to dissemination of notice of collective action settlement); *Molly Kirkpatrick et al. v. Cardinal Innovations*

*Healthcare Solutions,* No. 2:16-cv-01088, at D.E. 80 (M.D.N.C. Dec. 18, 2018) (awarding class counsel 33.39% of the gross settlement fund, <u>plus</u> reimbursement for costs and expenses); *Humble,* 2020 WL 8922792, at *2 (W.D.N.C. Aug. 24, 2020) (awarding Class Counsel more than one-third (36.63%) of class/collective settlement fund, which was lower than the 40% fee agreement); *Chrismon v. Pizza,* No. 5:19-CV-155-BO, 2020 WL 3790866, at *5 (E.D.N.C. July 7, 2020) (awarding class counsel 1/3 of settlement fund involving class/collective action settlement); *Devine v. City of Hampton, Virginia,* No. 4:14-cv-81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015) (settlement agreement provided attorney's fees in the amount of approximately 33% of the settlement fund in FLSA collective action settlement); *Hatzey v. Divurgent, LLC,* No. 2:18-cv-191, 2018 WL 5624300, at *4 (E.D. Va. Oct. 9, 2019) (awarding one-third of FLSA settlement fund of $2,450,000); *DeWitt v. Darlington Cty., S.C.,* No. 11 Civ. 740, 2014 WL 6408371, at *9 (D.S.C. Dec. 6, 2013) (awarding one-third of settlement fund in class/collective action settlement).

Although a percentage of fund method is preferred in this Circuit, to determine whether the fees sought under this method are reasonable, the lodestar may be used as a cross-check, as well as the twelve factors from *Barber,* 2 577 F.2d at 226 n.28.3 *505 *Phillips,* 2016 WL 2636289, at *2–3; *Kirven v. Central States Health & Life Co. of Omaha,* No. 3:11-2149-MBS, 2015 WL 1314086, at *12 (D.S.C. Mar. 23, 2015) (collecting district court cases within the Fourth Circuit that use the lodestar method as a cross-check to ensure that the percentage of the fund method award is fair and reasonable).

18

In *Barber*, the Fourth Circuit held the following factors to be considered in determining a reasonable attorneys' fee:

(1) The time and labor expended;

(2) The novelty and difficulty of the questions raised;

(3) The skill required to properly perform the legal services rendered;

(4) The attorney's opportunity costs in pressing the instant litigation;

(5) The customary fee for like work;

(6) The attorney's expectations at the outset of the litigation;

(7) The time limitations imposed by the client or circumstances;

(8) The amount in controversy and the results obtained;

(9) The experience, reputation and ability of the attorney;

(10) The undesirability of the case within the legal community in which the suit arose;

(11) The nature and length of the professional relationship between attorney and client; and

(12) Attorneys' fees awards in similar cases.

*Barber,* 577 F.2d at 226, n.28.

The factors a court considers are substantially identical to the *Barber* factors and need not be reviewed differently from the *Barber* factors. *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 261, n. 6 (E.D. Va. 2009). A review of the *Barber* factors support approving the attorneys' fees and costs requested here.

19

1.     **Time and Labor Required (the First *Barber* Factor)**

Class Counsel has spent significant effort and time to achieve the settlement. As set forth in the attached declaration, the Settlement was carefully negotiated based on informal factual discovery, a substantial investigation by Class Counsel, and the review and analysis of significant documents and data produced by Defendant. Class Counsel has worked diligently on this case, developing the theory of liability, reviewing and analyzing pay data for the class members,[1] preparing detailed damages analysis, communicating with Plaintiffs and opt-in Plaintiffs, engaging in numerous settlement negotiations, finalizing the terms of the collective action settlement, assisting in the drafting of the written Collective Action Settlement Agreement and exhibits, and researching and drafting the pleadings for approval of the settlement. Class Counsel will continue to work diligently through the final administration of the settlement and will be acting as the settlement administrator, which will involve dissemination of Notice and answering questions of the Settlement Class Members. Additionally, Courts "'have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.'" *In re Mills Corp. Sec. Litig.*, 265 F.R.D. at 265 (quoting *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009)). Assuming such a range of a multiplier, the lodestar range would need to be $9,400 (for a 4.5x multiplier)

---

[1] Defendant produced pay records for each and every one of the class members which Plaintiffs' Counsel had to review and analyze to calculate class damages.

to $21,250 (for a 2x multiplier).[2]   The work performed by Plaintiffs' Counsel to date exceeds this range and fees and costs will continue to accrue through the administration of notice, which supports approval of the fee requested.

**2.      Novelty and Difficulty of the Issues (the Second *Barber* Factor)**

This case involved a bona-fide dispute under the FLSA. "[O]vertime and minimum wage cases under the FLSA can be complex and difficult, involving the interaction among various statutes, regulations, and evolving case-law. At the least, they require an understanding of a specialized area of the law." *Newbanks v. Cellular Sales of Knoxville, Inc.*, 2015 WL 12843763, *9 (D.S.C. Feb. 4, 2015).   To prevail, Class Counsel would need to overcome Defendant's arguments regarding whether it violated the FLSA and whether it owes Plaintiffs and the Class overtime pay.   Assuming Plaintiffs are successful in proving liability, Defendant's arguments that Plaintiffs and the Class did not work the amount of overtime alleged and that Defendant acted in good faith such that it will avoid the imposition of liquidated damages would continue to impact a significant amount of the damages in this case, as well as the number of eligible opt-in plaintiffs. This factor supports the approval of Class Counsel's attorney fee request.

**3.      Skill Required: The Experience, Reputation, and Ability of the Attorneys (the Third and Ninth *Barber* Factors)**

---

[2] Even just using the minimum 56.6 hours of attorney time listed in Plaintiffs' Counsel's declaration, this would equate to an average hourly rate of $166.08 - $376.12 based on these multipliers.

Employment law is a very dynamic area of the law, requiring counsel to stay abreast of developments in both state and federal law." *DeWitt*, 2013 WL 6408371, at *11 (D.S.C. Dec. 6, 2013); *see also Newbanks, supra*. Plaintiffs' Counsel here focuses exclusively on plaintiff-side employment cases, including FLSA collective actions and class action cases. *See* De Arcangelis Decl. at ¶¶ 1-5. Plaintiffs' Counsel's efforts in bringing this litigation to a successful conclusion confirm her experience and ability. The professional standing and expertise of opposing counsel also is an important factor in evaluating the quality of services rendered by Plaintiffs' Counsel and "should be weighed in determining the fee, because such standing reflects the challenge faced by plaintiffs' attorneys." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005). Defendant's Counsel is extremely experienced in employment matters including FLSA and class/collective actions. This factor also weighs in favor of the requested fee here.

### 4.     Preclusion of Other Employment (the Fourth *Barber* Factor)

Class Counsel and Morgan & Morgan, P.A. accepted this case on a contingency basis without any assurance of payment for services. Collective action litigation is time consuming and requires a substantial commitment of time and resources, including advancing all litigation costs. Class Counsel has handled this action for more than ten months without receiving any payment for the work performed. *See* D.E. 1, filed April 21, 2021. This time and resource commitment represents a significant opportunity cost in terms of other work that could have been performed during the same period. This factor supports the approval of Class Counsel's attorney fee request.

22

**5. The Customary Fee for Like Work (the Fifth and Twelfth *Barber* Factors)**

The requested fee award is fair and reasonable when compared to similar fee awards based on percentage of the fund and lodestar analyses. *See supra* at pp. 17-18.

**6. Whether the Fee Is Fixed or Contingent (the Sixth *Barber* Factor)**

"Courts have generally recognized that a contingent fee lawyer may have the right to expect a fee greater than if his fee were guaranteed." *Va. Acad. Of Clinical Psychologists v. Blue Shield of Va.*, 543 F. Supp. 126, 148 (E.D. Va. 1982). Class Counsel's requested fee of 32.8% is reasonable because Class Counsel took on significant risk of non-payment, the burden of advancing litigation expenses, and the substantial opportunity cost of having to turn down other potentially lucrative work.[3] Class Counsel will continue to accrue fees and costs throughout the notice and settlement disbursement process. This factor supports the approval of Class Counsel's attorney fee request

---

[3] Recognizing the importance of attorneys willing to handle employment cases on a full contingency, the Eleventh Circuit has explained:

> Vindication of the policy of the law depends to a significant degree on the willingness of highly skilled attorneys, such as those now before the court, to accept employment in [labor and employment] cases on a wholly contingent basis. They will hardly be willing to do so if their potential compensation is limited to the hourly rate to which they would be entitled in noncontingent employment. Busy and successful attorneys simply could not afford to accept contingent employment if those were the rules that were applied. The enforcement of our civil rights acts would then be entrusted largely to less capable and less successful lawyers who lack sufficient employment. Such an arrangement would ill serve policies of enormous national importance.

*Yates v. Mobile Cty. Pers. Bd.*, 719 F.2d 1530, 1534 (11th Cir. 1983).

23

**7. Time Limitations Imposed by the Client or Circumstances (the Seventh *Barber* Factor)**

This matter has been stayed since August 6, 2021 [D.E. 23] so that the Parties could work diligently to resolve this matter on a class-wide basis before engaging in additional litigation. Plaintiffs' counsel was provided extensive documentation produced by Defendant that had to be reviewed, analyzed and discussed with Plaintiffs. Plaintiffs' counsel prepared damages calculations under various scenarios before engaging in numerous settlement communications with defense counsel. Where there has been "[p]riority work that delays the lawyer's other legal work," this factor requires "some premium." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989). As discussed above, this time spent to pursue this matter was substantial and certainly imposed serious time limitations upon Class Counsel.

**8. The Amount in Controversy and Results Obtained (the Eighth *Barber* Factor)**

In the Fourth Circuit, "the most critical factor in calculating a reasonable fee award is the degree of success obtained." *Randle v. H&P Capital, Inc.*, 513 F. Appx. 282, 284 (4th Cir. 2013) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). As Judge Seymour recently held, "[i]n evaluating the results obtained for the class, courts have considered whether plaintiffs would receive a substantial percentage of their back pay amount." *McClaran v. Carolina Ale House Operating Co., LLC*, 2015 WL 5037836, at *4 (D.S.C. Aug. 26, 2015). As discussed above, Plaintiffs negotiated a substantial settlement that will

24

provide all Settlement Class Members with notice of this lawsuit, the ability to opt into this lawsuit, and recover **100%** of their unpaid wages, plus an amount equal to **95%** of their unpaid wages as liquidated damages. The total amounts made available for Plaintiffs and the Settlement Class totals $120,000.00, not including the service awards negotiated for Plaintiffs and the Pre-Notice Opt-ins. This factor supports the approval of Class Counsel's attorney fee request.

### 9. The Undesirability of the Case (the Tenth *Barber* Factor)

Judges within this Circuit have opined that, "employment cases do not appear to be eagerly sought out because of the difficulty of the cases and the complexity of the issues usually involved." *DeWitt*, 2013 WL 6408371, at *10 (D.S.C. Dec. 6, 2013). Class Counsel accepted this complex and time-consuming case on a contingency basis, with no guarantee of payment. *Reynolds v. Fid. Invs. Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 92092, at *4 (M.D.N.C. Jan. 8, 2020) (citing *Price v. City of Fayetteville*, No. 5:13–CV–150–FL, 2015 WL 1222168, at *6 (E.D.N.C. Mar. 17, 2015)) (recognizing wage and hour cases and class actions with no guarantee of success or attorneys' fees an indication of undesirability). There are relatively few attorneys nationwide with a practice focus limited to plaintiff-side wage and hour employment law. This factor supports Class Counsel's fee request.

### 10. Nature and Length of the Professional Relationship between Attorney and Client (the Eleventh *Barber* Factor)

Plaintiffs' Counsel has represented Plaintiffs and the putative class for nearly a

year in this litigation. While Plaintiffs' Counsel has not represented Plaintiffs prior to this action, the length of the current relationship militates in favor of the fee requested.

**11.  Attorney's fees awarded in similar cases.**

As discussed above, the 32.8% fee requested by Class Counsel is in line with fees awarded in similar cases. This factor supports the approval of Class Counsel's attorney fee request.

    F.    <u>Plaintiffs and the Pre-Notice Opt-In Plaintiffs are Entitled to Service Awards</u>

Defendant also agrees to pay a total of $8,000.00 in service awards to Plaintiffs and the Pre-Notice Opt-in Plaintiffs allocated as $3,000.00 to each Named Plaintiff and $1,000.00 each to the two (2) Pre-Notice Opt-ins, in addition to their individual settlement shares, in exchange for their execution of a <u>mutual</u> general release[4] of all claims against Defendant. This payment is compensation for the time spent in aiding in the investigation and development of the claims asserted by Plaintiffs on behalf of the class. It is very common in class action cases for service or incentive payments to be paid to named Plaintiffs or class representatives in addition to their proportionate share of the recovery. *See DeWitt v. Darlington Cty., S.C.*, No. 4:11-CV-00740-RBH, 2013 WL

---

[4] Although general releases can render an FLSA settlement agreement unreasonable, the Court is not required to evaluate the reasonableness of the settlement as it relates to non-wage disputed claims if the employee is compensated reasonably for the release executed. *See Rossi v. Circle Treatment Ctr., P.C.*, No. 14-3803-GJH, 2015 WL 1815501, at *3 (D. Md. Apr. 17, 2015). Here, the service awards are in addition to 100% of their back pay and 95% of liquidated damages and in exchange for a <u>mutual</u> general release of all claims and therefore fairly compensates them for executing such releases.

6408371, at *14 (D.S.C. Dec. 6, 2013). Such payments compensate Plaintiffs for their additional efforts, risks, and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action. *Id.*

"Courts around the country have approved substantial [service] payments in FLSA collective actions and other employment-related class actions." *DeWitt*, 2013 WL 6408371, at *14 (collecting cases). Service or incentive payments are especially appropriate in employment litigation, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class a whole, undertaken the risk of adverse actions by the employer or coworkers." *Id.* (citing *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 187 (W.D.N.Y.2005); *see also Chrismon,* 2020 WL 3790866, at *6 (E.D.N.C. July 7, 2020) (awarding $10,000.00 service award to lead Plaintiff who filed the case "when he was a current employee" of Defendant like Plaintiff-Breazeale was here). Here, the parties respectfully request this Court approve the requested modest service awards described above in exchange for the mutual general releases executed by Plaintiffs and the Pre-Notice Opt-in Plaintiffs.

IV.     Conclusion

In sum, the parties, through their counsel, submit the Settlement Agreement as a fair and reasonable resolution of the disputed issues, and believe strongly that its entry will ensure to "secure the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. Accordingly, the Parties urge this Court to enter an order: (i) conditionally certify this case for settlement purposes as a collective action under

27

Section 216(b) of the FLSA; (ii) approve the Settlement Agreement and its terms; and (iii) approve the issuance of Notice and Claim Forms to the Settlement Collective Members. (The Parties Proposed Order is attached to the Settlement Agreement as Exhibit D).

Dated this 15th day of March, 2022.

| | |
|---|---|
| */s/ Adam A. Smith*<br>ADAM A. SMITH, ESQ.<br>Bar No.: 31798<br>RIDDLE & BRANTLY<br>601 N. Spence Avenue<br>Goldsboro, NC 27534<br>Telephone: (919) 779-9700<br>Email: AAS@justicecounts.com<br>*Local Civil Rule 83.1 Counsel*<br><br>*/s/ Kimberly De Arcangelis*<br> Kimberly De Arcangelis, Esquire<br> Bar No.: 0025871<br> Morgan & Morgan, P.A.<br> 20 N. Orange Avenue<br> Orlando, Florida 32801<br> Telephone:    (407) 420-1414<br> Facsimile:     (407) 245-3383<br> Email:  KimD@forthepeople.com<br> *Pro Hac Attorneys for Plaintiffs* | /s/ Joshua R. Adams<br>JOSHUA R. ADAMS<br>N. C. State Bar No.: 49038<br>200 South College Street<br>Suite 1550, 15th Floor<br>Charlotte, NC 28202<br>Telephone: (980) 465-7237<br>Email: Joshua.Adams@jacksonlewis.com<br>*Local Civil Rule 83.1 Counsel*<br><br>*/s/ Eric Magnus*<br> ERIC R. MAGNUS<br> Georgia State Bar. No. 801405<br> 171 17th Street, NW<br> Suite 1200<br> Atlanta, GA 30363<br> Telephone: (404) 525-8200<br> Facsimile: (404) 525-1173<br> E-Mail: Eric.Magnus@jacksonlewis.com<br> *Pro Hac Attorneys for Defendant* |

28

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

**CASSIE BREAZEALE and**
**RHONDA GARDNER, on their own**
**behalf and on behalf of those**
**similarly situated,**                    **CASE NO.: 5:21-cv-181-D**

    **Plaintiffs,**

**vs.**

**AMPLER PIZZA II, INC.,**

    **Defendant.**             **/**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 15th, 2022 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                        */s/ Kimberly De Arcangelis*
                        Kimberly De Arcangelis, Esq.

4886-6065-2305, v. 1